UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEFFREY M. STEIN, D.D.S., M.S.D.,
P.A., et al.,

    Plaintiffs,

v.                                           CASE NO. 8:13-cv-2136-T-23AEP

BUCCANEERS LIMITED
PARTNERSHIP,

    Defendant.
_____/

## **ORDER**

    The plaintiffs are three dentists, a pest control service, and two other alleged recipients of an "unsolicited facsimile[ ] . . . [sent] to Plaintiffs for the purpose of offering for sale game tickets to the Tampa Bay Buccaneers' home football games . . . ." The complaint (Doc. 2) alleges that one plaintiff received five facsimiles, that one plaintiff received three, that one plaintiff received two, and that three plaintiffs received one. The complaint further alleges:

> Each such fax prompted the recipient to order individual game tickets by using the Tampa Bay Buccaneers' website at "Buccaneers.com" or calling a toll free number for "Ticketmaster" where Buccaneers' tickets could be purchased online.

(Doc. 2 at 5)

The complaint alleges in three counts that the facsimiles violate 47 U.S.C. § 227, the Telephone Consumer Protection Act; 47 C.F.R. § 64.1200; and 47 C.F.R. § 68.318(d), respectively.  The complaint alleges the existence of a class of persons who received an unsolicited facsimile from the defendant and alleges that the plaintiffs sue on behalf of themselves and on behalf of the class, each member of which is a person similarly situated to the plaintiffs.  The plaintiffs filed the summons and complaint on July 12, 2013, in the Circuit Court for Pinellas County, Florida. Service of process occurred on August 1, 2013.  Removal (Doc. 1) occurred on August 16, 2013.  On August 19, 2013, the defendant filed notices (Docs. 3-8) that the defendant had offered judgment under Rule 68, Federal Rules of Civil Procedure, to each of the six plaintiffs.  Each Rule 68 offer (Doc. 9, Exs. 1-6) tenders to a plaintiff the complete relief, including monetary and injunctive relief, available under the statute.

On August 21, 2013 – only two days after serving, and filing notice of serving, the Rule 68 offers of judgment – the defendant moved (Doc. 9) to dismiss the action because of the putative absence of an Article III "case or controversy" after service of the Rule 68 offers.  The next day, August 22, 2013, the plaintiffs moved (Doc. 10) to certify the class.  According to the motion, the defendant "sent facsimile advertisements to at least 100,000 different facsimile numbers."  (Doc. 10 at 2)

The memoranda from the parties address whether under the "case or controversy" requirement of Article III the Rule 68 offers of judgment to each plaintiff defeat federal jurisdiction because of "mootness." As the parties explain, several courts of appeals and at least two district courts in Florida have addressed closely related issues. For example, in *Damasco v. Clearwire Corporation*, 662 F.3d 891, 894-95 (7th Cir. 2011), Judge Rovner states:

> The doctrine of mootness stems from Article III of the Constitution, which limits the jurisdiction of federal courts to live cases or controversies. The doctrine demands that the parties to a federal case maintain a personal stake in the outcome at all stages of the litigation. Therefore, "[o]nce the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright, under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake."

662 F.3d at 894-95 (citation omitted).

> To allow a case, not certified as a class action and with no motion for class certification even pending, to continue in federal court when the sole plaintiff no longer maintains a personal stake defies the limits on federal jurisdiction expressed in Article III. That the complaint identified the suit as a class action is not enough by itself to keep the case in federal court. Even when a "complaint clearly and in great detail describes the suit as a class action suit," if the plaintiff does not seek class certification, then "dismissal of the plaintiff's claim terminates the suit."

662 F.3d at 896 (citation omitted).

In *Damasco* Judge Rovner captures the core of the constitutional disability that inheres in a purported federal action without a plaintiff who retains a "personal stake" in the outcome of the litigation, that is, an action without a plaintiff who retains the possibility of achieving relief in addition to the relief offered

- 3 -

unconditionally by the defendant at the outset – offered, as they say, "for the taking and from the start." In other words, a constitutional question intrudes: "Does a 'case or controversy' within the meaning of Article III of the Constitution persist after the plaintiff unilaterally refuses an offer from the defendant to recover the maximum relief available under the law for the wrong alleged?" *Damasco* and others say, "No." *Keim v. ADF Midatlantic, LLC*, No. 9:12-cv-80577-KAM, 2013 WL 3717737 (S.D. Fla. 2013) (Marra, J.); *Krzykwa v. Phusion Projects, LLC*, 920 F. Supp. 2d 1279 (S.D. Fla. 2012) (Middlebrooks, J.).[1]

Also, a parallel, prudential question appears: "Why should an action continue to consume scarce resources of the United States merely to permit a plaintiff to pursue a remedy that is available immediately, unconditionally, and without further cost to anyone?" Of course, a person of ordinary prudence would doubt the veracity of the report that a typical plaintiff had declined an immediate offer of complete relief, and upon receiving confirmation of the report the person undoubtedly would say, "Well, something else must be going on here."

The "something else" is plainly seen by anyone who looks. Assuming the truth of the allegation that 100,000 telephone numbers received a facsimile from the defendant and assuming that each recipient is a member of the class and each is

---

[1] *But see Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081 (9th Cir. 2011); *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239 (10th Cir. 2011); *Sandoz v. Cingular Wireless, LLC,* 553 F.3d 913 (5th Cir. 2008); *Weiss v. Regal Collections*, 385 F.3d 337 (3d Cir. 2004).

- 4 -

entitled to the statutory $500, the potential penalty for the defendant balloons to $50 million. If the plaintiffs sustain the allegation that the defendant "willfully or knowingly" violated the statute, the penalty trebles to $150 million. Either penalty is a formidable recovery for a class of persons whose sole injury is receipt of a facsimile advertising football tickets. And in either instance the attorney's fee (payable from the "common fund") undoubtedly will soar astronomically, notwithstanding that each plaintiff receives only $500 or $1,500 (minus the attorney's fee).[2]

On the question of a "case or controversy," the competing considerations emerge with clarity. On the one hand, the constitutional requirement of a "case or controversy" is not negotiable or subject to casual "exception," is not subordinate to the economic aspirations of either the plaintiffs or the plaintiffs' lawyers, and is not subject to circumnavigation by legislation or rule, either an agency's rule or a court's rule. On the other hand, a defendant's "picking off" a class representative by means of a targeted settlement offer – a practice that, if ungoverned, subverts the interests

---

[2] This action evokes the series of "false patent marking" actions under the False Marking Statute, 35 U.S.C. § 292(a), which required a fine of "not more than $500" for each article a defendant – "for the purpose of deceiving the public" – falsely marked as patented. Under the statute as construed from the enactment of the 1842 statute, 5 Stat. 544, § 5, until 2009, the $500 fine attached only once to each episode of false marking, rather than once to each item falsely marked. However, *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1301-04 (Fed. Cir. 2009), construed the statute for the first time to levy a distinct $500 fine for each falsely marked item. In response to a rapid surge in both litigation and outsized recoveries for false marking, Congress included in the Leahy-Smith America Invents Act, H.R. 1249, 112th Cong. (1st Sess. 2011), an amendment, 35 U.S.C. § 292(b), that permits only "[a] person who has suffered competitive injury" to sue "for recovery of damages adequate to compensate for the injury." Congress determined that a court's unexpectedly construing a statute that levies a modest fine to permit a massive recovery for an inconsequential injury warranted immediate statutory rectification.

protected by Rule 23 – is universally disfavored and disallowed after the filing of the motion for certification of the class. The judicial attempt to define with fairness a distinct boundary between the unassailable constitutional requirement of a "case or controversy" and the important prohibition against procedurally "picking off" a class representative resolves to the moment of filing the motion to certify the putative class. In other words, recognizing the competing interests, Judge Rovner in *Damasco* adopts a simple, neutral, conclusive, balanced, and reliably administered rule that sharply distinguishes between a bona fide and dispositive offer of judgment, which is protected as an encouraged form of settlement, and the unseemly tactic of "picking off" a class representative, which is prohibited as predatory:

> A simple solution to the buy-off problem that Damasco identifies is available, and it does not require us to forge a new rule that runs afoul of Article III: Class-action plaintiffs can move to certify the class at the same time that they file their complaint. The pendency of that motion protects a putative class from attempts to buy off the named plaintiffs. Damasco argues that this solution would provoke plaintiffs to move for certification prematurely, before they have fully developed or discovered the facts necessary to obtain certification. But this objection is unpersuasive. If the parties have yet to fully develop the facts needed for certification, then they can also ask the district court to delay its ruling to provide time for additional discovery or investigation. . . . Moreover, this procedure comports with Federal Rule of Civil Procedure 23(c)(1)(A), which permits district courts to wait until "an early practicable time" before ruling on a motion to certify a class.

662 F.3d at 896-97 (citations omitted).

In this action, the offers of judgment, the notices of which were filed August 19, 2013, followed service of process by eighteen days but preceded the motion to certify the class, filed on August 22, 2013. Under *Damasco,* decided almost

two years earlier in November, 2011, the Rule 68 offers of judgment preceded the motion to certify the class and, therefore, are not a prohibited "pick-off" of the putative class plaintiffs, whose declination of an offer of complete relief under applicable law leaves no justiciable "case or controversy."

*Damasco* requires a party to say from the outset what the party means and requires a party to mean from the outset what the party says; *Damasco* carefully preserves the important interests of the parties and the public and minimizes the opportunity for tactical machinations by either party.  For example, a plaintiff who pleads a class action should have no ulterior motive (for example, the threat of a class action for the benefit of an enhanced, early settlement for the named plaintiffs) and should promptly move to certify the class and promptly pursue the discovery, if any, or investigation, if any, necessary to establish the class.  On the other hand, a defendant who recognizes liability should have both an opportunity to offer promptly a judgment that awards complete relief and an opportunity to resolve the action with a minimum of loss to the parties and the public (who finance the courts).

In this instance, even assuming the dismissal of this action, a person receiving a facsimile contrary to the statute retains the full statutory right to quickly and inexpensively sue in county court, to receive a $500 payment for the trouble, and to sting the sender sufficiently to deter a further unsolicited facsimile to the unsuspecting recipient.  Applying *Damasco* and granting the defendant's motion sacrifices no

interest that is otherwise preserved in the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227.  The prospect of lawyers losing an opportunity to parlay a party's right to an exiguous statutory fine into a chance to recover an enormous fee is not a consideration worth considering.  The fact that a fine, intended to remind a person not to send an unsolicited or unwelcome facsimile, will not expand (at least in this action) into a punitive penalty in the tens of millions of dollars is, also, not a consideration worth considering.

## CONCLUSION

The defendant's motion (Doc. 9) is **GRANTED**.  This action is **DISMISSED** for lack of the jurisdictionally necessary "case or controversy."  The Clerk will close the case.

ORDERED in Tampa, Florida, on October 24, 2013.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE